J-S47009-23

2024 PA Super 151

| | | |
|---|---|---|
| ESTATE OF: J.L.C., AN ALLEGED INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.L.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 502 EDA 2023 |

Appeal from the Order Entered January 24, 2023
In the Court of Common Pleas of Delaware County
Orphans' Court at No: 0296-2020-O

BEFORE: STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:                                                    **FILED JULY 22, 2024**

Appellant, J.L.C., appeals from the January 24, 2023 orphans' court order appointing a guardian *ad litem* ("GAL") with the power to review Appellant's financial records, conduct transactions on Appellant's behalf, and make medical decisions and pay medical expenses on Appellant's behalf.[1] We vacate and remand.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> This matter stems from an emergency petition filed by the Delaware County Office of Services for the Aging (COSA) on August 31, 2020 requesting [Appellant] be adjudged an incapacitated person and requesting the appointment of a Guardian of her Person and Estate. On September 1, 2020, the Orphans' Court held an emergency hearing in which [Appellant]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] This order is final and appealable under Pa.R.A.P. 342.

appeared with counsel. The court subsequently issued a decree appointing Elizabeth Stefanide, Esquire, as [GAL] for [Appellant]. In its petition, COSA averred that [Appellant] was eighty years of age at the time and that she lacked capacity to make and/or properly communicate decisions concerning her Person and/or Estate. According to the petition, [Appellant] has two children, her daughter, [J.F.], and her son, [J.J.C.]. Her assets include thirteen residential/business properties, in addition to J&M Discount Tires, the values of which were listed "TBD." [Appellant] receives $1,170 per month in social security and $8,000 per month from Bryn Mawr Trust. COSA averred that [Appellant] resides in her home located … in Delaware County, Pennsylvania.

Per the psychological assessment of Dr. Megan Moore, attached to the petition as Exhibit A, a report of need was made to COSA concerning [Appellant] for financial exploitation. The alleged perpetrator, [Appellant's] daughter, was alleged to have been attempting to gain access to [Appellant's] finances. Up until 2017, both [Appellant's] son and daughter were named as her power of attorney. More recently, on August 2, 2020, [Appellant's] daughter, [J.F.], took [Appellant] to a new attorney to sign paperwork designating herself solely as power of attorney. [J.F.] took money from her account to pay the lawyer then executed the new power of attorney document and a new will. At the time, [J.F.] was questioning her brother [J.J.C.'s] management of the family business and assets, as he is the president of the family business (J&M Discount Tires) and has managed all of [Appellant's] financial affairs. [J.J.C.] provided an expert report, attached to the petition as Exhibit B, from [Appellant's] longtime psychiatrist and a neuropsychological evaluation performed in 2019, which indicates a level of incapacitation in [Appellant's] decision making.

The psychological assessment attached as Exhibit A was performed on August 21, 2020. During the evaluation, [Appellant] was unable to or had difficulty recalling the year she graduated, the year she was married, and the cause of her late husband's death. When [Appellant] was asked about power of attorney, she stated that both her son and daughter have financial and medical power of attorney. However, it was reported that [Appellant] signed a new power of attorney naming solely her daughter as power of attorney in early August.

At the time of the 2020 evaluation, Dr. Moore was provided with the assessment completed by Dr. Payne [on May 8, 2019]. Following the assessment, Dr. Payne concluded that [Appellant] had dementia of a mild-approaching-moderate severity, with features of longstanding psychiatric variability (bipolar history). Dr. Payne opined that [Appellant] was partially incapacitated but did have testamentary capacity regarding financial decision making, as she had a good understanding of her current estate plan.

Following the 2020 psychological assessment, Dr. Moore's report indicated that [Appellant] has major neurocognitive impairment with an impression of vascular dementia. Further, Dr. Moore opined that [Appellant] appears to be incapacitated and is in need of an emergency guardian, due to the significant amount of money in question and the family business being involved.

Another hearing was held on September 29, 2020, in which [Appellant] was represented by counsel. In addition to the allegations of financial exploitation against [J.F.], it came to light at this hearing that this has caused 'verbal altercations between [Appellant] and [J.F.] and caused [Appellant] to suffer episodes of acute depression for which she was treated by her psychiatrist. These fights were usually about money.'

At said hearing, Dr. Moore testified as to her findings in her expert report and evaluation of [Appellant], and [GAL], Elizabeth Stefanide, testified to her thorough investigation conducted since her appointment commenced at the beginning of September. Following the hearing held on September 29, 2020, due to the condition of [Appellant's] capacity and the [GAL's] concerns regarding the execution of the July 8th power of attorney, this court amended the [GAL] decree by suspending the July 8, 2020 power of attorney.

Following the two initial hearings and throughout the next year and a half, a multitude of pleadings were filed and hearings held thereon that were generally collateral to the main issue in this matter. On or about January 19, 2023, [GAL] Elizabeth Stefanide contacted the court via telephone to relay the difficulty in her ability to access certain financial documents of [Appellant], pursuant to her authority as [GAL] for [Appellant]. Due to said difficulty, a 2nd Amended Decree was issued on January 24, 2023 clarifying Ms. Stefanide's duties as [GAL].

Trial Court Opinion, 6/5/23, at 1-4 (record citations omitted) (cleaned up).

Thus, the orphans' court's findings of fact reveal malfeasance on the part of Appellant's daughter, J.F., and significant cognitive impairment of Appellant. Despite the latter, the orphans' court has yet to make a finding of incapacity. Appellant, in the lengthy recitation of facts in her brief, criticizes the alleged malfeasance of J.J.C., Appellant's son, and claims that COSA, the GAL, and the orphans' court are doing J.J.C.'s bidding. J.J.C. has filed a participant's brief in support of the orphans' court's decree refuting those allegations. In essence, Appellant is a wealthy, elderly, allegedly incapacitated person whose children do not get along and have accused each other of mismanagement of various aspects of Appellant's finances. As explained in detail below, we discern no statutory authority for the decree on appeal. We therefore have no occasion to delve into the details of Appellant's children's squabbles.

The orphans' court has issued two decrees; the original in 2020 (entered with the consent of all parties) and the "amended" decree presently before us. For reference, we quote the pertinent portions of both:

> [Stefanide] is appointed [GAL] on behalf of [J.L.C.] with powers including but not limited to unfettered ability to collect and review all financial records, whether such accounts are individually and/or jointly titled, as well as any past and/or current medical and/or mental health treatment records.
>
> The [GAL] shall have the authority to make medical decision [sic] for [J.L.C.].

The scope of representational services provided by [Stefanide] as [GAL] on behalf of [J.L.C.] be [sic] limited to litigation before the trial court and **SHALL NOT** include pursuing any appeal, absent this court's direction otherwise. The [GAL] shall have the authority to pay any and all outstanding bills, including real estate taxes, care attendants and/or groceries, etc.

Decree, 9/2/2020 (emphasis in original).[2]

The amended decree modified the original as indicated in bold:

[Stefanide] is appointed [GAL] on behalf of [J.L.C.] with powers including but not limited to unfettered ability to collect and review all financial records, **as well as the authority to conduct transactions on any and all financial accounts**, whether such accounts are individually and/or jointly titled, as well as any past and/or current medical and/or mental health treatment records. **This is including but not limited to brokerage and retirement accounts.**

The [GAL] shall have the authority to make medical decisions for [J.L.C.]. **The [GAL] shall have the authority to make life sustaining expenses, including the payment of bills, for the alleged incapacitated person. The [GAL] shall have the authority to make decisions that benefit the health, safety, and welfare of the alleged incapacitated person.**

[…]

**The court hereby suspends the July 8, 2020 Power of Attorney.**

Decree, 1/24/23 (emphasis added).

Appellant filed this timely appeal on February 23, 2023. She presents eight questions (Appellant's Brief at 4-5), which we will summarize and address in turn. First, we set forth the applicable standard of review:

_____

[2] The decree was entered in the certified record one day after the hearing.

- 5 -

> When an appellant challenges a decree entered by the [o]rphans' [c]ourt, our standard of review requires that we be deferential to the findings of the [o]rphans' [c]ourt.
>
> [We] must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Schwartz*, 275 A.3d 1032, 1033–34 (Pa. Super. 2022).

Appellant's first four assertions of error challenge the scope of powers given to the GAL. In specific, she argues that the orphans' court lacked statutory authority to clothe the GAL with sweeping authority for an apparently unlimited period of time. We agree. As explained above, the orphans' court appointed Stefanide as GAL on an emergency basis in 2020. **Three years later**, the orphans' court issued an "amended" decree clarifying and arguably expanding some of the powers of the GAL, who apparently is still serving on an emergency basis.

This matter commenced with COSA's petition for a declaration of Appellant's incapacity, and the appointment of a guardian of her person and guardian of her estate. To date, and for reasons not entirely clear from the record, none of those things has happened. Appellant is still an allegedly incapacitated person, and she has no guardian of her estate or her person.

- 6 -

Guardians of the estate and/or person can be appointed, pursuant to 20 Pa.C.S.A. § 5511, after a finding, by clear and convincing evidence, of incapacity. The duties of guardians of the person and estate are defined in 20 Pa.C.S.A. § 5521. The decree before us was not entered pursuant to § 5511, and the court did not purport to follow § 5521 in defining Stefanide's duties. Rather, the orphans' court appointed Stefanide as GAL after an emergency hearing and gave her powers as defined in the decree above, which appear to overlap somewhat with the statutory responsibilities of both a guardian of the estate and a guardian of the person. Stefanide has retained those powers for more than three years and apparently is set to retain those powers for an indeterminate time.

The orphans' court cites several sources of authority in support of its decree. First the court relies on Rule 2053 of the Pennsylvania Rules of Civil Procedure, which authorizes the appointment of a GAL to supervise and control the conduct of litigation on behalf of an **incapacitated** party. Pa.R.Civ.P. 2053; Orphans' Court Opinion, 6/5/23, at 6. In addition to the lack of a finding of incapacity from the orphans' court, the decree on appeal gives the GAL authority well beyond oversight of any pending litigation. Our Supreme Court has observed:

> The Rules of Civil Procedure authorize the guardian ad litem to supervise and control the conduct of the litigation. No provision is made in the rules for entrusting a guardian ad litem with the care and management of the property of the incompetent even where, as here, the fund which he is administering arises from the very subject matter of the litigation.

***Calantzis v. Collins***, 269 A.2d 655, 658 (Pa. 1970).[3]  Additionally, it is not the GAL who is representing Appellant in this appeal or, as far as the record demonstrates, any other pending litigation.  Appellant has retained separate counsel to challenge the orphans' court's decree.  Rule 2053 provides no authority for the decree on appeal.

The orphans' court also cites Rule 5.5 of the Pennsylvania Orphans' Court Rules, which permits appointment of a GAL to represent a person believed to be incapacitated but for whom no guardian of the estate has been appointed.  Orphans' Court Opinion, 6/5/23, at 6 (citing Pa.O.C., Rule 5.5(a)(1)).  The present case meets this criterion, as Appellant is believed to be incapacitated and nothing in the record indicates that a guardian of Appellant's estate has been appointed.  But, as with Rule 2053, nothing in Rule 5.5 contemplates the sweeping powers given to the GAL in this case.  Furthermore, a decree appointing a GAL pursuant to Rule 5.5 shall specify the proceeding or period during which the GAL shall act as such.  ***See*** Pa.O.C., Rule 5.5(d).  The decree on appeal does not do so.  Therefore, Rule 5.5 does not support the decree before us, because the decree gives the GAL sweeping powers not contemplated in the Rule, and not of limited duration and confined to a specific proceeding as expressly required by the Rule.

_____

[3]  Rule 2053 has been in effect since 1942.  A 1994 amendment substituted "incapacitated" for "incompetent."

Finally, the orphans' court cites 20 Pa.C.S.A. § 5513, which permits the appointment of an emergency guardian for an allegedly incapacitated person when the absence of a guardian will result in irreparable harm to the person or their estate. Orphans' Court Opinion, 6/5/23, at 6. Appellant is allegedly incapacitated and the court found, back in 2020, that irreparable harm would result absent the appointment of a temporary guardian. But § 5513 provides that an emergency order may be in effect for up to 72 hours and may be extended for no more than 20 days from the expiration of the initial order. There is no authority in § 5513 for the amendment, three years later, of an earlier decree which, if entered pursuant to § 5513, has long since expired.

Further, § 5513 incorporates the procedural dictates of § 5511. That section provides for the appointment of a guardian of the person or guardian of the estate of an incapacitated person after a finding by clear and convincing evidence that the person is incapacitated. 20 Pa.C.S.A. § 5511(a). Written notice must be provided to the alleged incapacitated person explaining the rights the alleged incapacitated person may lose as a result of a declaration of incompetency. *Id.* Nothing in the record indicates that these procedural dictates were followed in this matter. We observe that § 5511(a.1)(3), permits the appointment of a GAL to represent an allegedly incapacitated person, but the orphans' court has not relied on that subsection in support of its decree and, again, nothing in that subsection authorizes a GAL to have

sweeping powers over an allegedly incapacitated person's finances, medical decisions, and medical expenses for an indefinite time.

In summary, we agree with Appellant's argument that no statutory authority exists to support the decree before us. It appears from the record that the orphans' court and the parties have, for more than three years, subjected Appellant to a pseudo guardianship not authorized under any applicable law. We remind the parties and the orphans' court of this Court's prior warning regarding the potential for the pernicious misuse of incapacity proceedings: "[a] statute of this nature places a great power in the court. The court has the power to place total control of a person's affairs in the hands of another. This great power creates the opportunity for great abuse." *In re Hyman*, 811 A.2d 605, 608 (Pa. Super. 1992) (quoting *Estate of Haertsch*, 609 A.2d 1384, 1386 (Pa. Super. 1992)). For the foregoing reasons, we vacate the decree and remand for further proceedings in strict compliance with all applicable statutory and jurisprudential authority.

Decree vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2024

- 10 -